IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BUZZBALLZ, LLC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:15-CV-588-L** |
| | § | |
| JEM BEVERAGE COMPANY, LLC, f/k/a | § | |
| JEM BEVERAGE COMPANY, INC.; | § | |
| CARLOS G. GUILLEM; and ADAM M. | § | |
| PURCELL, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER AND OPINION

Before the court is Plaintiff Buzzballz LLC's Application for Preliminary Injunction for

Trademark Infringement against Defendants JEM Beverage Company, LLC F/K/A JEM Beverage

Company, Inc.; and Carlos G. Guillem (Doc. 26), filed May 1, 2015.  For the reasons herein stated,

the court **denies** Plaintiff Buzzballz LLC's Application for Preliminary Injunction for Trademark

Infringement against Defendants JEM Beverage Company, LLC F/K/A JEM Beverage Company,

Inc.; and Carlos G. Guillem.

## I.    Procedural and Factual Background

On February 19, 2015, Plaintiff filed Plaintiff BuzzBallz, LLC's Original Complaint Against

Defendants JEM Beverage Company, LLC, f/k/a JEM Beverage Company, Inc.; Carlos G. Guillem;

and Adam M. Purcell (Doc. 1). Plaintiff BuzzBallz LLC ("Plaintiff" or "BuzzBallz")  brought suit

against Jem Beverage Company, LLC, f/k/a Jem Beverage Company, Inc. ("JEMBEVCO"), Carlos

G. Guillem ("Guillem"), and Adam M. Purcell ("Purcell") (collectively, "Defendants").

Plaintiff asserts that BuzzBallz sells pre-mixed alcoholic drinks.  Plaintiff owns Federal trademarks relating to the text mark for BuzzBallz (the "BuzzBallz Text Mark") and the graphic for BuzzBallz ("BuzzBallz Graphic Mark").  *See* Pl.'s Compl., Ex. A and B.  Plaintiff alleges that BuzzBallz employed Guillem as its Director of Operations and that, in the course of his employment, Guillem learned some or all of BuzzBallz trade secrets.  Plaintiff cites Guillem's nondisclosure agreement in which he covenanted to not copy or disseminate BuzzBallz's confidential information.  *See* Pl.'s Compl., Ex. C.  Plaintiff alleges that Guillem's employment with BuzzBallz ended around December 2013.

During Guillem's employment with BuzzBallz, Plaintiff asserts that Guillem began providing services to BuzzBallz's competitor, JEMBEVCO.  Plaintiff attaches an engagement letter between Guillem and JEMBEVCO dated March 29, 2013, and a Dallas Morning News Article, dated November 22, 2013, in which Guillem is named as a representative of JEMBEVCO.  *See* Pl.'s Compl., Ex. B and C.

Plaintiff alleges that JEMBEVCO and Guillem competed unfairly with BuzzBallz and developed "a line of pre-mixed alcoholic beverages under a name confusingly similar to the BuzzBallz marks   namely, 'BoozBox'   and a trade dress confusingly similar to the BuzzBallz Trade Dress   specifically, a beverage container in the approximate form of a primary geometric figure . . . ." Pl.'s Compl. ¶ 20.  Ultimately, Plaintiff argues that the term "BoozeBox" is confusingly similar to the term, marks, and dress used by BuzzBallz.  Pl.'s Compl.  ¶¶ 23-25.

Plaintiff alleges claims for trademark infringement under 15 U.S.C. § 1114(1)(a); trade dress infringement under 15 U.S.C. § 1125(a)(1)(A); breach of a nondisclosure agreement; breach of fiduciary duty; misappropriation of trade secrets; unfair competition, and civil conspiracy.

**Memorandum Opinion and Order - Page 2**

On March 27, 2015, JEMBEVCO and Guillem filed Defendants JEM Beverage Company, LLC's and Carlos G. Guillem's Motions to Dismiss, For More Definite Statement, and to Strike, and Motion to Stay Proceedings (Doc. 18), which remains pending before the court. On May 1, 2015, Plaintiff filed Plaintiff BuzzBallz, LLC's Application for Preliminary Injunction for Trademark Infringement Against Defendants Jem Beverage Company, LLC f/k/a Jem Beverage Company, Inc.; and Carlos G. Guillem (Doc. 26), which is before the court today.  Plaintiff requests that the court "enter a preliminary injunction against Defendants [JEMBEVCO and Guillem], enjoining them from using, or permitting any company, subsidiary, or agent of theirs to use, the name 'BoozeBox,' in any form or configuration, as applied to or in relation to pre-mixed alcoholic beverages during the pendency of this lawsuit."  Pl.'s Application Prelim. Injunc. 24-25.

## II.     Standard for Preliminary Injunction

There are four prerequisites for the extraordinary relief of a preliminary injunction.  A court may grant a preliminary injunction only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citing *Canal Auth. of Fla.  v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*)).  The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a preliminary injunction can be granted.  *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993.  Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the preliminary injunction.

III.    Analysis

   A.    **Whether there is a Substantial Likelihood that the Movant will Prevail on the Merits**

To obtain a preliminary injunction, Plaintiff must establish that there is a substantial likelihood that it will prevail on the merits.  To prevail on a trademark infringement claim, a plaintiff must show "(1) that the mark or trade dress, as the case may be, qualifies for protection and (2) that [defendant's] use of the mark or trade dress creates a likelihood of confusion in the minds of potential consumers."  *Pebble Beach Co. v. Tour 18 Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998). Because Plaintiff needs to satisfy both elements to prevail on the merits, it is not entitled to the injunctive relief requested if it fails to establish either element.  At this stage, Plaintiff fails to establish that confusion is likely, and, therefore, the court will address this element first.

   1.    **Whether There is a Likelihood of Confusion**

The court determines that Plaintiff has not established that it is substantially likely to prevail, because, at this stage, it has not proved that confusion between BuzzBallz and BoozeBox is likely. When analyzing a trademark infringement action, the most important question is whether a mark is likely to cause confusion with another. *Xtreme Lashes, LLC v. Extended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009) (citing *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir.1985)). The term "likelihood of confusion" means more than a mere possibility; rather, Plaintiff must demonstrate a probability of confusion.  *Id*. (citation omitted).  The following factors should be considered when determining likelihood of confusion: (1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers.  *Id.* at 227.  No factor is dispositive.  *Id.*  The court considers each of these factors in turn.

**Memorandum Opinion and Order - Page 4**

### a.      Type of Trademark

The court first considers the type of trademarks at issue and determines that Plaintiff's text mark, "BuzzBallz," warrants protection.  Proof that a mark has been registered with the United States Patent and Trademark Office ("USPTO") constitutes prima facie evidence that the mark is valid and that the registrant has the exclusive right to use the registered mark in commerce with respect to the specified goods or services.  *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010) (citing Lanham Act, 15 U.S.C. §§ 1057(b) and 1115(a)). "This presumption of validity may be rebutted by establishing that the mark is not inherently distinctive." *Amazing Spaces, Inc.*, 608 F.3d at 237 (citation omitted).  Although a statutory presumption of validity is accorded to marks registered under the Lanham Act, this presumption is rebuttable and may be overcome by establishing that the mark is generic or descriptive and lacking secondary meaning. *Id*. (citations omitted).

> The presumption of validity flowing from trademark registration . . . has a burden-shifting effect, requiring the party challenging a registered mark to produce sufficient evidence to establish that the mark is [non-distinctive] by a preponderance of evidence. The burden shifted by the presumption is one of production rather than persuasion. If sufficient evidence of [non-distinctiveness] is produced to rebut the presumption, the presumption is "neutralized" and essentially drops from the case, although the evidence giving rise to the presumption remains.

*Id.* at 239 (quoting *Retail Servs. Inc. v. Freebies Publ'g*, 364 F.3d 535, 542  43 (4th Cir.2004) and expressing with approval its approach with respect to the presumption of validity).  Categorization of a mark is a factual issue.  *Xtreme Lashes, LLC*, 576 F.3d at 227.

Plaintiff has a trademark for the BuzzBallz Text Mark, and this constitutes *prima facie* evidence of validity.  Pl.'s Compl., Ex. B.  As a result, the court must decide whether Defendants can rebut this presumption by establishing that the mark is not inherently distinctive.  Defendants

contend that the BuzzBallz Text Mark is descriptive, is not inherently distinctive, and has not acquired secondary meaning.

The court determines that the term "BuzzBallz" essentially suggests, but does not describe, an attribute of the goods. The consumer must exercise some imagination to apply the trademark to the good. Thus, Plaintiff's mark is entitled to protection from confusingly similar marks, and this factor weighs in favor of finding confusion.

### b. Similarity of the Marks

The court next considers the similarity between Plaintiff's BuzzBallz Text Mark and Defendants' BoozeBox Text Mark. The issue of mark similarity is heavily contested by the parties. "The relevant inquiry is whether, under the circumstances of the use, the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated." *Elvis Presley Enter., Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998) (internal quotation marks and citation omitted).

Plaintiff contends that the BuzzBallz trade name and Boozebox trade name "involve the same number of syllables, identical cadence and percussive tones, and terms with strongly similarly or related meanings." Pl.'s Application for Prelim Injunc. 11. Plaintiff cites a recent decision by the Trademark Trial and Appeal Board (the "TTAB") for its comparative value. *See Abita Brewing Company LLC v. Mother Earth Brewing, LLC*, 2014 WL 4731129, at *6-9 (T.T.A.B. Sept. 11, 2014). The TTAB determined that the phrase "Sunny Haze" and "Purple Haze" were similar and that confusion was likely. The TTAB reasoned that "PURPLE and SUNNY simply modify the common element HAZE, giving the impression that Applicant's mark SUNNY HAZE appears as a variant of Opposer's mark PURPLE HAZE." *Id.* at *6.

The TTAB decision cited by Plaintiff is distinguishable. While Purple Haze and Sunny Haze appear as variants of one another, BuzzBallz and BoozeBox appear to originate from different sources. Stated differently, they appear as competitors and not as variants of one brand. Moreover, BuzzBallz and BoozeBox do not share any identical terms, which further differentiates the marks. *Cf. US Risk of Va,, LLC v. Lighthouse Programs LLC*, No. 06-2033, 2008 WL 4387026, at *6 (N.D. Tex. Sept. 6, 2008) ("The only difference between the names 'Lighthouse Programs,' 'Lighthouse LLC,' and 'Lighthouse Underwriters' is the second word in the company name.").

Based on the record before it, the court determines that Plaintiff has not presented sufficient evidence or argument to support a conclusion that the marks are similar and will lead to confusion. Accordingly, at this stage, this factor does not weigh in favor of finding confusion.

### c.      Product Similarity

The next factor that the court considers is product similarity. BoozeBox and BuzzBallz offer similar products; they both sell pre-mixed alcoholic drinks in 200 milliter quantities. Pl.'s App. 92, 95. Plaintiff also attaches exhibits demonstrating that the flavors offered by BuzzBallz and BoozeBox are similar, including variations of the following: lemonade, peach, margarita, and strawberry. *See* Pl.'s Application for Prelim. Injunc. 14, Fig. 1.

Defendants disagree and attempt to undermine a finding of similarity between the products. They highlight the differences between the containers, lids, and labels. *See* Defs.' Resp. 10-11.

**Memorandum Opinion and Order - Page 7**

A side by side comparison is shown below:



Pl.'s Fig. 1.

The court determines that the products are similar with respect to the type of product offered to consumers, as both BuzzBallz and BoozeBox offer pre-mixed drinks. Therefore, this factor favors finding confusion; however, the relative strength of this factor is low in light of the differences emphasized by Defendants.

### d. Outlet and Purchaser Identity

According to Plaintiff, BuzzBallz sells its products in liquor stores, convenience stores, and grocery stores. *See* Pl.'s App.15, Kick Aff. ¶ 10. Plaintiff asserts that Defendants are still developing their sales efforts and that, thus far, they have sold their products in the same liquor stores that carry Plaintiff's goods. *Id.* Plaintiff acknowledges that there is scant evidence supporting this factor and argues that, "as a matter of public policy, a lack of evidence as to a potential

**Memorandum Opinion and Order - Page 8**

infringer's retail outlets due to the trademark registrant's proactive efforts to prevent infringement should not be weighed against finding a likelihood of confusion." Pl.'s Application for Prelim. Injunc. 15. Notwithstanding Plaintiff's policy arguments, the court is not merely engaging in an analysis of likelihood of confusion. Rather, it is deciding whether to issue a preliminary injunction, an extraordinary remedy, and, therefore, it declines to make this determination without sufficient supporting evidence.[1]

The court determines that Plaintiff did not provide sufficient evidence to establish that the outlet and purchaser identity supports a determination that confusion is likely. At the same time, the court cannot say that this factor supports a finding that confusion is not likely, and, therefore, it will treat this digit of confusion as neutral.

### e.      Advertising Media Identity

Neither party briefed this digit of confusion. Accordingly, this factor cannot support Plaintiff's argument that confusion is likely and cannot support a conclusion that Plaintiff is likely to prevail on the merits.

### f.      Defendant's Intent

Plaintiff contends that this factor weighs "very heavily in favor of finding a likelihood of confusion," because Defendants engaged in a concerted effort to mimic and compete unfairly with BuzzBallz. Pl.'s Mot. 16. Plaintiff, however, does not provide supporting evidence. To support this factor, Plaintiff asserts various allegations "upon information and belief." Pl.'s Application Prelim. Injunc. 16-17; Pl.'s App. 9, Kick Aff. ("Based on the rapidity with which JEM Beverage

---

[1] Defendants do not address this factor in detail, but they assert that "it is highly unlikely . . . that consumers seeing two products on sale side-by-side in the same store would be confused into thinking they originated from the same source . . . ." Defs.' Resp. 14.

Company, L.L.C. has been able to bring four (4) flavors for its BoozeBox product to market, with four (4) more flavors soon to follow, it is my belief that portions of BuzzBallz, L.L.C.'s confidential recipe research and data have been . . . used . . . ."). Plaintiff has failed to provide the court with sufficient supporting evidence, and, as a result, this factor does not support finding confusion likely.

### g.      Actual Confusion

Plaintiff does not brief this factor.   Defendants argue that this factors supports a determination that confusion is unlikely. There is no evidence that actual confusion between the marks is likely, and the court, therefore, finds that this factor weighs against finding confusion.  As a result, this factor cannot support Plaintiff's contention that it is likely to succeed on the merits.

### h.      Care Exercised by Potential Purchasers

The final factor that the court must consider when analyzing likelihood of confusion is the level of care exercised by potential purchasers in Plaintiff's and Defendants' markets. "Where items are relatively inexpensive, a buyer *may* take less care in selecting the item, thereby increasing the risk of confusion." *Xtreme Lashes, LLC*, 576 F.3d at 231 (*quoting Board of Supervisors for La. State Univ. Agric. and Mech. Coll. v. Smack Apparel, Co.*, 550 F.3d 465, 483 (5th Cir.2008)  (emphasis added).  The more sophisticated the potential buyers of products or services or the more costly the products or services, the more careful and discriminating the reasonable prudent purchaser exercising ordinary caution may be.   Plaintiff, however, has not provided sufficient evidence to support a conclusion that, as the factor applies to these facts, the converse of this statement is true.  That the products sold by Plaintiff and Defendant are generally inexpensive only supports a conclusion that those consumers *may* take less care in selecting the items.

The record is devoid of any evidence supporting a conclusion that consumers are unlikely to exercise care. *See Xtreme Lashes, LLC*, 576 F.3d at 231 (citation omitted);  Pl.'s App. 9, Kick Aff. ¶ 10 (stating that BuzzBallz sells its products at an average price of $2.99 and that BoozeBox sells its products in liquor stores at an average price point of $2.99).  Given the low cost of the products at issue, this factor provides little or no relevance to the court's determination.  The affidavits submitted by Plaintiff are replete with conclusory statements and do not specifically point to any evidence that would support a conclusion that Plaintiff's and Defendants' customers will exercise little care when purchasing the products at issue.  Merrilee Kick, the president of BuzzBallz, merely remarks that BuzzBallz and BoozeBox market their products to the "the general consuming public" and not to "professionals."  Pl.'s App. 9, Kick Aff. ¶ 10.  Considering Plaintiff's burden to establish that it is substantially likely to prevail, the court determines that the record and evidence before it do not support a finding that this factor favors Plaintiff.

The court determines that a preliminary injunction is not appropriate.  As the court described earlier, no one factor is dispositive.  At this stage, the type of trademark and the similarity of products are the only factors that weigh in favor of finding a likelihood of confusion.  On the other hand, the following support a conclusion that confusion is *not* likely: similarity of the marks, actual confusion, and care exercised by potential purchasers.  The court determines that the factors relating to the outlet and purchaser identity, advertising media identity, and the defendant's intent are neutral.  In this instance, a factor that the court treats as neutral undermines Plaintiff's burden to establish that it is substantially likely to prevail.  If a factor fails to favor BuzzBallz, Plaintiff necessarily fails to show that it is *substantially* likely to prevail on that factor.

The court determines that Plaintiff has not carried its burden and established that it is substantially likely to succeed on the merits.  There are too many unsupported allegations and too many countervailing factors for the court to conclude that confusion is likely.  As a result, Plaintiff is not entitled to the extraordinary relief it requests, and the court will deny its motion for preliminary injunction.

### B.       Irreparable Harm

To obtain the injunctive relief sought, Plaitniff must also establish that it will suffer irreparable harm.  Even assuming *arguendo* that Plaintiff is likely to succeed on the merits, its delay in filing its motion for preliminary injunction undermines its contention that it will suffer irreparable harm.[2]  Plaintiff's delay in seeking a preliminary injunction rebuts any presumption of irreparable harm. The law is well-established that:

> [D]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction. Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief. Evidence of an undue delay in bringing suit may be sufficient to rebut the presumption of irreparable harm.

*Wireless Agents, L.L.C. v. T Mobile USA, Inc.*, 2006 WL 1540587, *3 (N.D.Tex. June 6, 2006) (Fitzwater, J.) (internal citations and punctuation omitted).  Although Plaintiff first learned of the alleged infringing conduct around December 30, 2014, which represents the date on which Plaintiff filed its Petition to Cancel the BoozeBox mark with the USPTO, it did not file its Original Complaint until February 19, 2015, and it did not file the present motion seeking injunctive relief

---

[2] Plaintiff argues that injury is presumed when likelihood of confusion is established.  *See Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (affirming the district court's issuance of a permanent injunction and stating, "All that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed.") (quotation marks and citation omitted).  Defendants dispute the applicability of this authority for the determination before the court today.  In any event, regardless of these contentions, Plaintiff's delay undermines its arguments of injury.

**Memorandum Opinion and Order - Page 12**

until May 1, 2015. *See* Defs.'Mot. to Dismiss, Ex. F. Based on these facts, the court determines that Plaintiff's undue delay is sufficient to rebut a presumption of irreparable harm. *See generally Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir.1975) (affirming district court's denial of temporary injunctive relief where movant, among other things, delayed three months in making its request); *Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2d Cir.1995) (vacating preliminary injunction where movant waited four months to seek a preliminary injunction after filing suit); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir.1985) (ten-week delay in seeking injunction for trademark infringement undercut claim of irreparable harm). Plaintiff's notable delay provides an additional basis for the court to deny its request for a preliminary injunction.

## III.     Conclusion

For the reasons stated herein, the court **denies** Plaintiff BuzzBallz LLC's Application for Preliminary Injunction for Trademark Infringement against Defendants JEM Beverage Company, LLC F/K/A JEM Beverage Company, Inc.; and Carlos G. Guillem (Doc. 26), filed May 1, 2015.

**It is so ordered** this 26th day of June, 2015.


Sam A. Lindsay
United States District Judge